ALEX. BENECKE *v.* UNITED STATES (No. 4370) [1]

United States Court of Customs and Patent Appeals, July 6, 1942

*Eugene R. Pickrell* (*Eugene A. Chase* of counsel) for appellant.
*Paul P. Rao*, Assistant Attorney General (*Richard E. FitzGibbon* and *Joseph F. Donohue*, of counsel), for the United States.

[1] C. A. D. 214.

56

[Oral argument April 9, 1942, by Mr. Chase and Mr. Donohue]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, and JACKSON, Associate Judges[2]

GARRETT, Presiding Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Second Division, holding certain ground, steel rolls (or rollers), used in rolling mills for cold-rolling steel, classifiable as parts of machine tools dutiable at the rate of 30 per centum ad valorem, under paragraph 372 of the Tariff Act of 1930. The importer's claim is that they should be classified as parts of machines, not specially provided for, and assessed at the rate of 27½ per centum ad valorem under another provision of paragraph 372.

The pertinent provisions of the paragraph read:

PAR. 372. * * * machine tools, 30 per centum ad valorem; * * * all other machines, finished or unfinished, not specially provided for, 27½ per centum ad valorem: *Provided*, That parts, not specially provided for, wholly or in chief value of metal or porcelain, of any of the foregoing, shall be dutiable at the same rate of duty as the articles of which they are parts: *Provided further*, That machine tools as used in this paragraph shall be held to mean any machine operating other than by hand power which employs a tool for work on metal.

It appears from the record that the rolling mill in which rolls such as those here involved are installed consists of a large, heavy steel structure from 8 to 12 feet high and that the rolls, two or more, are held in position parallel to each other and fairly close together. In operation the material which is to be shaped, or cold-rolled, is carried between the rolls as they revolve. The particular motive power used in operating the device is not stated in the record, but it is stated to be "other than hand power."

One of the rolls was described (and we understand the description applies to all those imported) by the importer in the course of his testimony as follows:

A large cylindrical piece of steel having a largest diameter of about 8¾ inches. The largest diameter extends over 34 inches at both ends, but the cylindrical body, the roll, extends further to reduced diameters, and one of those rolls weighs 1,160 pounds.

From the descriptive matter above recited the complete rolling mill, or plant, may be visualized. There is a heavy metal frame for holding the rolls and keeping them in proper position. The rolls, of course, are the parts which perform the actual work but without the frame they would be useless for the purpose intended, and vice versa. Obviously, to determine the tariff status of the rolls—that is, whether they are parts of machine tools or parts of machines—it must first be determined whether the complete structure is a machine tool or a machine.

---

[2] LENROOT, Judge, did not participate in this decision.

To state the matter differently: If a complete rolling mill be a machine tool, and one were imported, it would be assessable under the 1930 act with duty at the rate of 30 per centum ad valorem, and rolls for one, imported separately, would be parts of "machine tools" and take the same rate, but if the complete rolling mill be a "machine" as distinguished from a "machine tool," it would, upon importation, take the rate of 27½ per centum ad valorem, and parts for it would take the same rate.

The question of what constitutes a "machine tool," and also what constitutes a "machine" for tariff purposes, has been before the Customs Court and this court on a number of occasions.

The term "machine tools" seems to have first appeared in the 1909 tariff act where a duty upon them was provided under that designation but the term was not defined.

In the case of *Myers* v. *United States*, 1 Ct. Cust. Appls. 226, T. D. 31260, which arose under that act, "floor planers, resembling in general style lawn mowers, propelled by hand" but having an electric motor, the power from which operated the planing knives, were held by this court to be classifiable as machine tools, rather than as machines. In the case of *United States* v. *Georgia Pulp and Paper Manufacturing Co.*, 3 Ct. Cust. Appls. 410, T. D. 32998, which also arose under the 1909 act, large, power-driven devices used to cut bark from logs were held not to be machine tools. The decision in the latter case was governed by proof of commercial designation to the effect that devices of the kind there involved for *working upon wood* were not machine tools within the commercial understanding of the meaning of "machine tools." The decision went no further than such negative holding, although it carried the clear implication that machine tools, under the proof respecting commercial designation, were only such as operated upon metal. The decision, however, did not imply that *all* devices or mechanisms used for working on metal were to be regarded as "machine tools" in a tariff sense, but indicated to the contrary.

The 1913 tariff act for the first time in tariff legislation, so far as our researches have disclosed, gave the definition of machine tools embraced in the second *proviso* of paragraph 372 as quoted *supra*, and it was repeated in the same words in the 1922 and 1930 acts. By its terms it limits any machine tools covered by the paragraph to those used for work on metal. It would seem that by its enactment Congress evidenced as intention to adopt the interpretation expressed in the *Georgia Pulp and Paper Mfg. Co.* case, *supra*, but it may be remarked that while the definition limits machine tools to those used in the metal working art, it does not necessarily mean that all devices used in that art are machine tools.

In the case of *Keith Dunham Co.* v. *United States*, 26 C. C. P. A. (Customs) 250, C. A. D. 24, to which we make allusion later in this decision, we stated that the definition "is not free from ambiguity."

A case (*John L. Vandiver* v. *United States*, T. D. 37555, 34 Treas. Dec. 200) arose under the 1913 act in which the merchandise involved was a complete mill for cold-rolling metal. We deduce from the decision that it was assessed with duty at the rate of 20 per centum ad valorem, being classified by the collector as a manufacture of metal, not specially provided for, under paragraph 167 of that act, and that the importer claimed it to be classifiable as a machine tool under paragraph 165 of the act, assessable with duty at the rate of 15 per centum ad valorem.

The Board of General Appraisers (now the United States Customs Court) sustained the claim of the importer, holding the complete rolling mill to be a machine tool within the meaning of the definition. The decision was rendered March 11, 1918, and no appeal was taken from the judgment.

The imported article in that case differed from the articles involved in the instant case in that the former was a complete structure whereas the rolls here involved are parts; also, the statutory provision under which the importer claims here was not present in the 1913 act. That is to say, the 1913 act did not make provision for machines, using "machines" as a general term. Paragraph 165 of the act (in which the legislative definition of machine tools first appeared) reads:

165. All steam engines, steam locomotives, printing presses, and machine tools, 15 per centum ad valorem; embroidering machines, and lace-making machines, including machines for making lace curtains, nets, or nettings, 25 per centum ad valorem; machine tools as used in this paragraph shall be held to mean any machine operated by other than hand power which employs a tool for working on metal.

It will be observed that all the *machines*, as distinguished from *machine tools*, covered by that paragraph were designated *eo nomine*. So far as we can determine, all other machines composed of metal were remitted to paragraph 167 of that act. So, the issue in the *Vandiver* case, *supra*, was between the general phrase "machine tools" and the "basket" paragraph. As a matter of fact, the Board of General Appraisers (now the United States Customs Court) held the rolling mill there involved to be a machine, saying:

It is not disputed that a rolling mill is a machine which is operated by other than hand power and which works upon metal. The only question to be here determined is whether the rolls which work directly upon the metal are "tools" in the sense that term is used in said paragraph.

Various dictionary definitions of the term were then quoted and it was said, in substance, that the rolls performed the function formerly performed by hand hammers, which latter were regarded as tools.

Taking the decision as a whole, it seems apparent that the classification of the entire structure, for tariff purposes, was determined by the character attributed to the rolls.

What view this court would have taken of the issue as there presented, under the statutes then applicable, had the case been appealed, cannot now be stated, of course, but we have deemed it proper in view of the statutory changes which have since occurred to analyze that decision with some care. The trial court, in effect, held that decision controlling in the instant case, and the Government seems to take that view.

Paragraph 372 of the Tariff Act of 1922 retained all the articles *eo nomine* designated in paragraph 165 of the 1913 act and, in addition so designated a number of other articles. It provided for "machine tools and parts of machine tools" and, after the various *eo nomine* designations, provided for "all other machines or parts thereof  *  *  * not specially provided for  *  *  *." The rate of duty fixed for "machine tools and parts of machine tools" and for "all other machines or parts thereof," not specially provided for, was the same, and naturally no case arose under that act which presented the issue here involved. The paragraph retained the definition of machine tools stated in the 1913 act, and it appears from the "Summary of Tariff Information 1920," pages 265–6, prepared by the United States Tariff Commission for the use of Congress in formulating the 1922 act, that the *Vandiver* case, *supra*, was referred to. The effect which should be given that as a part of the legislative history of the involved statutes will be the subject of later discussion.

In paragraph 372 of the Tariff Act of 1930 some articles were enumerated which were not named in the 1922 act, and the phraseology was changed in certain particulars, but those changes do not seem to be material so far as the issue relative to *classification* of the instant merchandise is concerned. The rate for "all other machines" is fixed at 27½ per centum ad valorem and the rate for parts thereof is fixed the same in the first *proviso* of the paragraph, while that for machine tools and parts thereof is fixed at 30 per centum ad valorem, the definition of machine tools stated in the 1913 and 1922 acts being retained.

In the *Keith Dunham Co.* case, *supra*, there was involved the classification of merchandise which comprised part of a device, which device in complete form was referred to as a "secator." The function of the secator was found to be that of "cutting through metal plate on a predetermined line by means of an oxy-acetylene flame, emanating from the torch."

The issue in that case was limited to the question of whether the imported article should be considered as a machine tool, falling within the provision for machine tools in paragraph 372 of the Tariff Act of

1930, or as an article "such as * * * portable tools * * * and parts thereof * * *," having an electrical element or device as an essential feature and, therefore, classifiable under paragraph 353 of the act. The Customs Court had held the latter classification to be the proper one and rendered judgment accordingly. We affirmed the judgment.

The "electrical element" feature of the imported part was the determinative factor in that case, and, as the issues were there presented, we had no occasion to pass upon the question of whether a part of a "secator" was part of a "machine tool," or part of a "machine," as those terms are used in paragraph 372 of the Tariff Act of 1930.

Here the issue as to whether the involved rolls are parts of machine tools or parts of machines is squarely raised, and it is contended on behalf of the importer, in substance, that the decision in the *Vandiver* case, *supra*, gave too broad a meaning to the term "machine tool" and that a holding in an earlier case (*Massce & Co. et al.* v. *United States*, 26 Treas. Dec. 691, T. D. 34413, G. A. 7559) should be followed here.

It may be said that the *Massce & Co.* case, *supra*, arose under the 1909 tariff act which, as has been stated, did not contain a definition of machine tools. It was not decided, however, until after the passage of the 1913 act and in its decision the Board of General Appraisers (now the United States Customs Court) quoted the definition which had been inserted in the latter act and, apparently, gave it some weight. The particular holding which appellant contends is applicable here is embraced in the following paragraph of the board's decision:

> In view of the uncontradicted testimony of all of the witnesses who appeared in the case at bar, to the effect that a machine tool must of necessity perform its operations on metal with the aid of a cutting tool, and in view of the contradictory nature of such testimony with respect to all other phases of the questions at issue herein, it will be readily seen that the previous court interpretations of the term "machine tools" should be further limited and restricted in their application; that in addition to a machine being operated by other than hand power and designed to work on metal it *must also perform its operations with the aid of a cutting tool.* [Italics ours.]

It is appellant's contention that a rolling mill does not have a cutting tool but that the metal operated upon is shaped by pressure.

Whatever may have been the precise view of the board at the time of the decision in the *Massce & Co.* case (the decision was rendered April 20, 1914) relative to the interpretation of the term, it is obvious that in the later *(Vandiver)* case (decided March 11, 1918), in which the definition stated in the 1913 act was directly involved, the board did not apply the "cutting tool" limitation.

There was no effort in the instant case to establish a commercial meaning of the term "machine tool" different from its common mean-

ing. The importer introduced evidence in the nature of expert testimony respecting its common meaning and we have examined that testimony with interest. It is not binding upon the courts, of course, but it was not improper to introduce it, since testimony of that character may, under some circumstances, prove of aid in determining common meaning.

We find it unnecessary to review the testimony given in this case, however, because we are convinced that under the familiar, and frequently applied, doctrine of legislative ratification of judicial interpretation, the trial court correctly held that the decision in this case must be governed by the decision in the *Vandiver* case, *supra*.

That decision interpreted the legislative definition of the term "machine tools" with respect to the applicability of the term to a device in all respects similar to a device of which the rolls here at issue are parts. As heretofore stated, the interpretation so made was specifically brought to the attention of Congress during the preparation of the bill which became the Tariff Act of 1922, and Congress in that act reenacted the definition without change, as did a subsequent Congress in the Tariff Act of 1930. We think the involved rolls must be held to be parts of machine tools.

Other legislative history is referred to in the briefs for the respective parties with arguments as to its pertinency but, in view of what we conceive to be the controlling factor here, it need not be discussed or recited.

The judgment of the United States Customs Court is *affirmed*.